The Deputy Commissioner found, contrary to plaintiff's testimony, that she did not miss work or suffer psychologically due to the compensable incident, and noted repeatedly that she did not tell her treating physicians about pertinent auto accident injuries. However, an award was made in reliance on the medical testimony. While normally expert medical testimony in workers compensation cases is necessary, generally reliable, and fairly disinterested, it is not "obligatory for the Commission to accord an involuntary or unquestioned credence to any particular testimony" and it "may accept or reject the testimony of a[n expert medical] witness, either in whole or in part, depending solely upon whether it believes or disbelieves the same", in light of the witness' opportunity to see or know the truth of the matter, and the other evidence and circumstances. Andersonv. Northwestern Motor Co., 233 N.C. 372, 376, 64 S.E.2d 265
(1951). In this instance, those include a relatively slight trauma and mild initial symtoms, considering the later complaints; other accidents that explain those later complaints; months following the compensable incident without complaint or treatment; ill will against the employer; and, plaintiff's pattern, when talking to her doctors, of blaming the compensable incident and omitting mention of pertinent auto accident injuries for which she received months of treatment.
Upon review of all of the competent evidence of record with reference to the errors assigned, the Full Commission hereby REVERSES the Opinion and Award of the Deputy Commissioner and makes the following FINDINGS OF FACT:
The following were entered into by the parties at the hearing before the Deputy Commissioner as
STIPULATIONS
1. On December 19, 1990, the parties were bound by and subject to the North Carolina Workers' Compensation Act.
2. On said date (s) the employer-employee relationship existed between the parties.
3. As of said date (s) Travelers Ins. Co. provided the coverage to the employer as provided under said Act.
4. That the plaintiff sustained an injury by accident arising out of and in the course of the employment with the defendant-employer on December 19, 1990.
5. On said date the plaintiff was earning an average weekly wage of $240.00.
6. That the issues to be determined in this case are:
 a. Were the injuries of which the plaintiff complains caused by the accident occurring on December 19, 1990; and,
 b. If so, to what compensation, if any, is the plaintiff entitled under the Act.
 c. If so, with what medical treatment is the plaintiff entitled to be provided by the defendants.
7. The parties further stipulate into evidence twenty-seven pages of medical records.
* * * * * * * * * * * * * * * * * *
FINDINGS OF FACT
1. Prior to the compensable accident, on October 21, 1989, plaintiff was injured in an automobile accident, suffered cervical and back strain, and was treated for neck and arm complaints by a chiropractor until September 2, 1990. On December 19, 1990, the plaintiff was 35 years of age with a high-school diploma and some further education in business, social work and nursing, and had been working for the defendant-employer since April 11, 1988, when she sustained an injury by accident arising out of and in the course of her employment with the defendant-employer when a flap of a box that weighed approximately 12 pounds and containing Hanes undergarments struck her in her head on the right side as the box moved along a conveyor belt at the plaintiff's workstation, knocking her off balance and causing her to become temporarily dazed and dizzy.
2. On the evening of December 19, 1990, the plaintiff went to the emergency room. (The record shows that plaintiff sought treatment at the emergency room on two other occasions for relatively minor, unrelated conditions, i.e., a puncture wound and sore throat, jaw and ear pain.) Three days later plaintiff saw her family doctor, Dr. Aizcorbe, who treated her conservatively with medication through January and early February 1991. Plaintiff complained to these providers solely of headaches and blurry vision, with no mention of neck or shoulder pain. At her January 4, 1991 appointment with Dr. Aizcorbe, she complained only of headaches. In late January she was examined at the Piedmont Eye Clinic, where it was determined that she did not need glasses. Except for the medical visits above, plaintiff saw no other physicians between the time of her December 1990 injury and her visit to Chiropractor William H. Carlisle on July 31, 1991.
3. The plaintiff returned to her employment with the defendant-employer on December 20, 1990 and has lost no compensable time from work, returning to her regular employment January 2, 1991 after the Christmas and New Year's holidays, and thereafter, continued to work for the defendant-employer until July 21, 1991. In early 1991, she told the employers' Safety Manager that she had obtained medical attention, felt fine and did not need more. Her employment was terminated on July 21, 1991, occasioned by her arguments and confrontations with a co-employee, according to the employer. Plaintiff was very upset about being fired, and filed a lawsuit against the employer.
4. On July 31, 1991, following her termination by the employer, the plaintiff began to receive treatment from Dr. William H. Carlisle, a chiropractor. Plaintiff related a history that approximately 6 to 8 months before she had leaned over to retrieve a box from the conveyor and another box had struck her on the right side of her head, making her initially dizzy, but that she then regained her composure; that she was aware of an immediate headache, however, it was not until a couple of days later that she felt uncomfortable with soreness on the right side of her neck. Plaintiff did not relate to Dr. Carlisle the history of the 1989 auto accident for which she received approximately eleven months of treatment. Dr. Carlisle's initial opinion relating the December 19, 1990 accident to the condition he treated was formed in the belief that the accident was the first cause of neck and back pain, and his speculation that the accident could have aggravated the former injury and thereby caused a need for his treatment seven months later is not persuasive. He testified that plaintiff had "substantially improved" under his treatment prior to her second auto accident on September 9, 1991.
5. On September 9, 1991, the plaintiff was involved in a second automobile accident resulting in injuries to her neck and back. On September 14, 1991 plaintiff went to the emergency room complaining of neck pain, right shoulder pain and headaches. Dr. Carlisle again treated plaintiff from September 11, 1991 to March of 1992 for neck and back injuries from the September 1991 auto accident. The plaintiff returned to regular employment for another employer sometime in April of 1992.
6. On September 18, 1991 plaintiff saw Dr. John S. Noell, a general practitioner. Plaintiff related a history that the conveyor belt she was working on broke and caused something to hit her in the forehead, knocking her unconscious, causing immediate headaches and pains in her neck and back. Plaintiff failed to mention the auto accidents on September 9, 1991 and October 19, 1989 that resulted in injuries to her back and neck. Consequently, Dr. Noell's opinion relating the accident to the condition he diagnosed is not persuasive.
7. On September 23, 1991 plaintiff first saw Dr. Paula R. Newsome, an optometrist, complaining of difficulty seeing far away; of burning, aching eyes; of sensitivity to bright sunlight and tired eyes. Plaintiff related a history of being hit in the right temple by a box at work, but did not relate the history of the September 9, 1991 or the October 1989 auto accidents. Dr. Newsome diagnosed plaintiff as farsighted with a small amount of astigmatism in both eyes. In light of these facts, the other possible causes for such vision changes referenced by Dr. Newsome, and particularly, the prior examination and diagnosis at Piedmont Eye Clinic shortly after the accident, the greater weight of the evidence fails to show that plaintiff's prescription for eyeglasses from Dr. Newsome was necessary as a result of the accident.
8. On October 1, 1991 plaintiff first saw Dr. Robert B. McBride, an orthopaedic surgeon, with complaints of right-sided neck pain and blurred vision. Plaintiff related that she had been hit in the head with a box on December 19, 1990, but failed to mention the auto accident she had been involved in approximately three weeks before, or the auto accident in 1989 that resulted in injuries to her neck and back. Dr. McBride diagnosed her with probable impingement syndrome of the right shoulder. In 1993, Dr. McBride diagnosed plaintiff with right C7 radiculopathy. When taking the auto accidents into account, Dr. McBride could not testify with medical certainty the December 19, 1990 accident caused, aggravated or contributed to the conditions from which she suffered following the auto accidents and at the time he saw her.
9. The plaintiff has lost no time from work as a result of the injury occurring on December 19, 1990 for which she is entitled to compensation, nor has she suffered any compensable mental or psychiatric condition as a result of said accident.
10. In view of the fact that plaintiff was involved in two automobile accidents that caused her neck and back problems, one prior to and one subsequent to her injury by accident, there is not sufficient credible and convincing evidence of record to conclude that the injury by accident of December 19, 1990 caused, contributed to or aggravated any permanent partial disability sustained by the plaintiff.
11. In view of all the credible and pertinent evidence of record, plaintiff has failed to prove by the greater weight of the evidence that the accident of December 19, 1990 caused, contributed to or aggravated the conditions of which she complained in July 1991 and thereafter, or caused permanent partial disability or the need for medical compensation after February, 1991.
12. Plaintiff's examinations and treatment by Dr. Aizcorbe and Piedmont Eye Clinic were reasonably necessary as a result of the December 19, 1990 accident.
* * * * * * * * * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
1. On December 19, 1990, the plaintiff sustained an injury by accident arising out of and in the course of her employment with the defendant-employer. N.C. Gen. Stat. § 97-2 (6).
2. Plaintiff is not entitled to compensation for disability. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to examination and treatment rendered as a result of the accident in December 1990 through February 1991. Otherwise, plaintiff is not entitled to the further medical compensation claimed. N.C. Gen. Stat. §§ 97-2 (6),97-2 (19), and 97-25.
* * * * * * * * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendants shall pay for examinations and treatment rendered by Dr. Aizcorbe and Piedmont Eye Clinic referenced above when the statements for same have been submitted to the carrier and approved in accordance with the rules of the Commission.
2. Otherwise, plaintiff's claim must be, and hereby is DENIED.
3. Each party shall bear its own costs.
 S/ ___________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING: S/ _________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _________________ MARY M. HOAG DEPUTY COMMISSIONER
JRW/jss/md 6/1/95; 4/7/97